IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| SUZAN D. WARE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 3:14-cv-1022-CSC |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.  Introduction

The  plaintiff  applied  for  disability  insurance  benefits  pursuant  to  Title  II  of  the
Social Security Act,  42 U.S.C. § 401 et seq. alleging that she was unable to work because
of a disability.  Her application was denied at the initial administrative level.  The plaintiff
then  requested  and  received  a  hearing  before  an  Administrative  Law  Judge  ("ALJ").
Following the hearing, the ALJ also denied the claim.  The plaintiff submitted additional
materials to the Appeals Council, but the Council rejected the plaintiff's request for review.
The ALJ's decision consequently became a final, reviewable decision of the Commissioner
of Social Security (Commissioner).[1]  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.
1986).  But the first issue in this case is not about what the ALJ did.  Rather, the issues in

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

this case are about what happened at the Appeals Council and whether it reviewed evidence submitted to it.  The final determination of the Council is also a reviewable final decision of the Commissioner, *see Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007), so what the Council did or did not do is reviewable under 42 U.S.C. § 405(g).  The other issue is also about the Appeals Council's denial of review.  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[2] the Commissioner employs a five step, sequential evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Ingram, supra* at 1260.  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).  The court "may not decide the facts anew, reweigh the evidence, or substitute  . . . [its] judgment for that of the [Commissioner]."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must, however,] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings .  . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

### III.  The Issues

**A.  Introduction**.  After a hearing, the ALJ determined that Ms. Ware had severe impairments of "acromioclavicular joint arthritis chronic impingement syndrome of the right shoulder status post remote open acromioplasty and excision of the distale clavicle and subacromial bursectomy, chondromalacia of the patella and meniscal tear of the left knee status post remote arthroscopic surgery, and recurrent lumbosacral strain." (R. at 56). Nonetheless, the ALJ concluded that Ms. Ware had a residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b) except that she was limited to frequently operate foot controls with her left foot.  The Claimant was limited to  frequently reaching overhead with her right upper extremity. The Claimant was limited to no climbing, balancing, kneeling, or crawling. The Claimant was limited to no work  at unprotected heights or around moving mechanical parts.  The Claimant was limited to performing simple, routine, repetitive tasks and making simple, work-related decisions.

(R. at 57).

Based on that residual functional capacity determination, the ALJ concluded Ms. Ware could return to her prior work and also perform other jobs in the national economy and, therefore, she was not entitled to disability benefits.

**B.  The Issues**.  As stated by the plaintiff, the issues presented for review are as follows:

> 1. The Commissioner's decision should be reversed, because the administrative record does not reflect that the Appeals Council considered Attorney/Representative–Supplied Evidence (REPEVID), dated 08/12/2013, in denying review, or, even that it conducted the required threshold evaluation of the evidence to determine whether it was new and material evidence that it should consider on the question of whether to grant review.

2. The Commissioner's decision should be reversed, because the Appeals Council erroneously denied Mrs. Ware's request for review in light of the material evidence submitted thereto.

(Doc. # 11, Pl's Br. At 4).

## IV.  Discussion

**A. Introduction**. A disability claimant bears the initial burden of demonstrating an inability to return to his past work.  *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990).  In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends; and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983).  The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review.  *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981).  The ALJ must also state, with sufficient specificity, the reasons for her decision referencing the plaintiff's impairments.

> Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.

42 U.S.C. § 405(b)(1).  Within this analytical framework, the court will address the plaintiff's claims.

**B.  The Appeals Council Review of Evidence**.  After the ALJ issued her final, unfavorable decision, Ms. Ware sought review by the Appeals Council.  In support of that

endeavor she submitted briefs, other written materials and additional medical evidence.
All of that was before and considered by the Appeals Council when it rejected Ms. Ware's
request for review. (R. at 17, 20).  Specifically, those documents are

> Exhibit 16E Representative Correspondence, dated July 19, 2013,
> Exhibit 17E Representative Statement Related to the Unfavorable Decision,
> dated August 16, 2013,
> Exhibit 18E Representative Brief, dated August 15, 2013,
> Exhibit 19E Representative Correspondence, dated September 11, 2013,
> Exhibit 14F Medical record from Edward Ho, M.D., dated October 24, 2005
> to October 28, 2005.
> Exhibit 15F Correspondence from Keith L. Fuller, D.O., dated June 21, 2013
> and
> Exhibit 16F Headaches Medical Source Statement, dated July 2, 2013.

(R. 20-21).

What is at issue is whether the Appeals Council considered Ms. Ware's lawyer's
letter dated August 13, 2013, with the attached affidavits from Ms. Ware and her husband.
(R. at 28-37). To fully understand Ms. Ware's contention, it is necessary to look at what
the ALJ said about Ms. Ware's credibility.

> In addition to considering the very limited objective evidence that predates
> the Relevant Period,  the undersigned has also considered the Claimant's
> allegations and testimony in determining her residual functional capacity.
> Her allegations and testimony have been afforded only marginal weight
> as they are marginally credible.
>
> The Claimant's alleged onset date seems to coincide with the time frame
> in which she moved from Colorado to Alabama.  This concurrence of
> events suggests the Claimant stopped working in anticipation of moving
> away from Colorado as opposed to being medically unable to work. The
> fact the Claimant did not seek any medical treatment for the next five
> years supports this conclusion and undermines the Claimant's allegation
> that she became disabled in 2006.
>
> While the Claimant provided testimony about a variety of limitations, the
> Claimant's testimony seemed to drift towards her more current limitations

6

as opposed to her limitation from 2006 to 2011. The lack of medical treatment further indicates her alleged limitations were not reflective of her condition during the Relevant Period but the period after her date last insured, when she resumed seeking treatment.

The temporal remoteness of the alleged onset date also undermines the believability of her allegations. Since the alleged onset date was nearly seven years ago, it is to be expected that the Claimant, or any person for that matter, would not accurately remember all of the events and symptoms she experienced or did not experience at that time.

The Claimant also admitted that when she moved to Alabama in 2007 that she was responsible for unpacking their household goods while her husband was at work. The Claimant's ability to perform such physically demanding tasks further indicates the Claimant's allegations a (sic) testimony do accurately represent the Claimant's condition during the Relevant Period.

(R. at 59).

Ms. Ware contends that had the Appeals Council evaluated and considered the two affidavits, the Council would have granted review and addressed "issues raised by the [ALJ's] Decision that cast unfavorably on the credibility of Ms. Ware's testimony." (Doc. # 11 at 5-6). There is no question that Ms. Ware's lawyer's letter and the two affidavits were not mentioned in the Appeals Council's order which listed the additional evidence it had reviewed and considered. Relying on *McMeans ex rel. M.L.M. v. Colvin*, No. 2:13cv108-SRW, 2014 WL 2961090, at *3-4 (M.D. Ala. July 1, 2014), Ms. Ware argues that because of that error the court must remand this case to the Commissioner for further review. Ms. Ware further argues that it would be improper for the court to evaluate this additional evidence because that is the province of the Commissioner, not the court.

Credibility determinations are the province of the ALJ, and a court will not disturb a clearly articulated credibility finding supported by substantial evidence. *Foote v. Chater*,

67 F.3d 1553, 1562 (11th Cir. 1995).  But, the Appeals Council does have the authority to review and reject credibility determinations made by an ALJ.

> We conclude that in such circumstances, the function of judicial review is limited to determining whether the Appeals Council's decision is supported by substantial evidence on the record as a whole. We also hold that the Appeals Council's rejection of an ALJ's credibility findings is a relevant factor in determining whether there is substantial evidence to support the decision of the Appeals Council. Thus, the Appeals Council should ordinarily reject the ALJ's credibility findings expressly and state the reasons for its conclusion.

*Parker v. Bowen*, 788 F.2d 1512, 1514 (11th Cir. 1986).

So, given all of the foregoing, what is this court to do?  The court could mechanistically remand this case to the Commissioner so the Appeals Council (assuming it had not) could review the two affidavits and express its view about the credibility finding of the ALJ.  But the question of credibility is not like review of medical evidence and how that evidence bears on the residual functional capacity of a disability claimant.  That kind of review is simply not within the competence of a court. That is what *McMeans* was about, and that is what distinguishes that case from the instant case.  The question here is whether the ALJ's credibility determination was supported by substantial evidence and whether the affidavit evidence would call that support into question.  Such a question is within the province of this court, and the court concludes, therefore, that it is entirely appropriate for it to address that question.

The two affidavits largely focus on the last paragraph of the ALJ's discussion of Ms. Ware's credibility.  The ALJ thought that her ability to ability to  " perform such physically demanding tasks" eroded her testimony about the severity of her pain and

discomfort.  The two affidavits explain that when the Wares moved to Opelika in 2007, Mr. Ware "handled all but some of the smallest boxes and did the unpacking of larger boxes."  (R. at 29).  After her husband became ill in September of 2007, a friend helped her unpack.  (R. at 30).  Ms. Ware stated that she did not lift boxes, but she did "remove the items and place them in shelves, drawers and cabinets at comfortable positions."  (*Id.*)

The court concludes that even if the ALJ had not considered Ms. Ware's activities in unpacking, there still would be substantial evidence supporting her credibility decision. Ms. Ware's alleged onset date of disability is November 17, 2006, and her date last insured is December 31, 2011.  During this period of time, Ms. Ware did not go to a doctor for treatment of any of her illnesses, a fact which she admits in her affidavit. "While it is true that I did not go to the doctor from our arrival in Opelika until February 6, 2012 . . ."  (R. at 31).  The bulk of the ALJ's discussion of Ms. Ware's credibility centers on the lack of medical treatment during this period,[4] and this period – from 2006 to 2011 – is the relevant period for determining whether she is entitled to disability benefits. This lack of medical evidence and the fact that Ms. Ware chose[5] not to seek medical care is substantial evidence supporting the ALJ's conclusion about Ms. Ware's credibility.  A remand is not warranted.

---

[4] The ALJ also suggested that Ms. Ware's move to Opelika, Alabama from Colorado was the precipitating event for her stopping work instead of her becoming unable to work.  The two affidavits tend to show that Ms. Ware stopped work before she knew her husband would get a new job in Opelika.  But even that does not diminish the impact of the lack of medical treatment on the believability of Ms. Ware's testimony about the severity of her impairments from 2006 to the end of 2011.

[5] Ms. Ware explains in her affidavit that because doctors in Colorado did not help her, she lost trust in the medical profession.  But the fact remains that her failure to seek treatment undercuts her statements about the severity of her conditions.

**C.  The Appeals Council's Denial of Ware's Request for Review**.  On February

12, 2014, the Appeals Council denied Ms. Ware's request for review of the ALJ's decision.

(R. at 17).  The letter from the Appeals Council stated that

> [i]n looking at your case, we considered the reasons you disagree with the
> decision and the additional evidence listed on the enclosed Order of Appeals
> Council.   We considered whether the Administrative Law Judge's actions,
> findings or conclusion is contrary to the weight of the evidence. We found
> this information does not provide a basis for changing the Administrative
> Law Judge's decision.

(R. at 17-18).

The additional evidence to which this paragraph refers are Exhibits 16-19E and 14-

16F which have already been described.  Ms. Ware makes several arguments about the

effect of this new evidence which, if it is material and creates a reasonable probability that

it would change the administrative outcome, Ms. Ware contends warrants a remand.  *See*

*Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).  The court will address each argument.

*1. Treating Physicians' Opinions*.  After receiving an unfavorable opinion from the

ALJ, Ms. Ware asked for a supplemental hearing to present additional evidence which

primarily consisted of the affidavits relating to the ALJ's credibility findings and medical

evidence from her treating physician.[6]  Ms. Ware first attacks the validity of the ALJ's

opinion by noting that the ALJ stated that Ms. Ware's physician's declined to give her an

opinion about whether her conditions relate back to the relevant period.

It is not at all clear to the court what the import of this argument is or how it advances

Ms. Ware's position.  Whether her doctors declined to give an opinion or just did not do it

---

[6] The physician is Dr. Fuller who Ms. Ware began seeing in early 2012.

in a timely fashion is immaterial.  What is important is that at Step 4 of the sequential evaluation process, which asks whether she can return to her former work, Ms. Ware has the burden of proof.  *Johns v. Bowen*, 821 F.2d 551 (11th Cir. 1987).  Prior to or at the hearing she didn't submit any medical evidence relating to the relevant period from 2006 to 2011.  The hearing was held on February 7, 2013.  (R. at 66).  The ALJ issued her opinion on April 25, 2013.  Ms. Ware did not submit the additional evidence until August 13, 2013.  (R. at 23). An ALJ is not required to wait almost six months after a hearing to allow a claimant to find new evidence, especially after almost four months of the claimant having the benefit of knowing what the ALJ concluded.

*2. The ALJ's Interpretation of Medical Evidence*.  Ms. Ware complains that before getting Dr. Fuller's opinion, "the ALJ herself interpreted the medical evidence and crafted limitations and restrictions imposed by Ms. Ware's medically severe impairments." (Doc. # 11 at 14).  Ms. Ware then raises the standard arguments to the effect that an ALJ cannot substitute her opinion for that of a medical professional.  Those standard arguments are correct as a matter of law, but they are beside the point here.  An ALJ must assess and make a finding about a claimant's residual functional capacity based on all of the relevant medical and other evidence in the case.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.").  Thus, contrary to what Ms. Ware argues, it is entirely proper for the ALJ to interpret medical evidence to determine functional limitations.

*3. Relation Back of New Medical Evidence.*  The plaintiff submitted to the Appeals Council the treatment notes from Doctor Ho who examined the plaintiff in Colorado on October 24, 2005.[7]  The plaintiff also submitted a June 21, 2013, letter from Dr. Fuller who began treating Ms. Ware shortly after the end of her eligibility period, December 31, 2011. Ms. Ware contends that this new evidence which was not before the ALJ is material and creates a reasonable possibility that it would change the outcome of the administrative consideration of her case.  In support of that argument, Ms. Ware relies on *Culver v. Astrue*, 924 F. Supp. 2d 1295 (N.D. Ala. 2013), in which the court said as follows:

> Importantly, all [the new evidence] describe physical and psychological symptoms manifested by Ms. Culver that, due to their nature and severity, could bear on her condition during the relevant period between January 23, 2007, and February 25, 2010. In other words, there is a "reasonable possibility" that the evidence, if credited, would persuade the ALJ in this case to reverse its decision.

*Id.* at 1302.

Surely, Dr. Ho's notes and Dr. Fuller's letter collectively show that Ms. Ware had back, knee and shoulder problems with pain as well as migraines and decreased grip strength in her hands.  But unlike the evidence in Culver which described "physical and psychological symptoms . . . that, due to their nature and severity, could bear on her condition . . ." the evidence submitted by Ms. Ware establishes only the existence but not the severity of her conditions during the relevant period.  Ms. Ware places heavy reliance on Dr. Fuller's comment that her "conditions have developed over an extended period of time which has resulted in increased pain.  If her conditions were left untreated they would

---

[7] This date is before the plaintiff's disability onset date.

worsen and not likely respond to medical management." (R. at 662).   Unfortunately, Ms. Ware's reliance is misplaced.   The import of Dr. Fuller's observation must be understood in the context of all the facts in this case.   And the most important fact, admitted by Ms. Ware, is that during the relevant period she sought no medical care for her conditions.   The only reasonable conclusion which may be drawn from that fact is that the severity of her conditions did not preclude work.   Moreover, just as the failure of a claimant to follow prescribed treatment justifies a denial of benefits, the failure to seek treatment also supports a denial of benefits.   And here, that is especially true when her new treating physician, Dr. Fuller, opines that left untreated her conditions would worsen.   In short, the court concludes that there is no possibility that the new evidence would change the administrative decision.

For the foregoing reasons, the Commissioner's decision denying Social Security benefits will be affirmed.   A separate final judgment will be entered.

Done this 11th day of April, 2016

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE